IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ARCH INSURANCE COMPANY,<br>Plaintiff,<br><br>v.<br><br>KEYDET SOLAR CENTER, LLC,<br>Defendant. | Civil Action No. 3:25CV1041 (RCY) |

**MEMORANDUM OPINION**

In this declaratory judgment action, Plaintiff Arch Insurance Company ("Arch") seeks a declaration that it is discharged from any and all liability arising out of or related to the Performance Bond, issued by Plaintiff on behalf of Blue Ridge Power, LLC, in conjunction with the Construction Contract. The case is before the Court on Defendant Keydet Solar Center, LLC's ("Keydet") Motion to Dismiss or, In the Alternative, to Stay the proceedings, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), in which Defendant requests that the Court either dismiss or stay the action while the parties proceed with the required pre-litigation mediation in accordance with the Construction Contract. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, it is appropriate to grant in part and deny in part the Motion to Dismiss.[1]

## I. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

[1] On September 21, 2026, the Court issued an Order granting in part and denying in part the Motion to Dismiss, promising an opinion to follow. Order, ECF No. 23. This Memorandum Opinion explains the Court's reasoning underpinning that Order.

defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* At the motion to dismiss stage, the Court may consider the face

of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and whose authenticity is unchallenged and matters of public record subject to judicial notice. *Id.*

## II. FACTUAL ALLEGATIONS & PROCEDURAL HISTORY

On January 11, 2024, Defendant Keydet, as Owner, and Blue Ridge, as Contractor, entered into a Construction Contract for the design and construction of a solar power plant in Charles City, Virginia in the amount of $130,159,715.00. Compl. ¶ 6, ECF No. 1. Plaintiff Arch, as Surety, issued the Bond (No. SU1195992) dated June 18, 2024, naming Blue Ridge as Contractor and Keydet as Owner, in the amount of $130,159,715.00. *Id.* ¶ 7.

On September 23, 2025, Defendant terminated the Construction Contract by issuing a "Notice of Contractor Default and Termination under the Performance Bond," without first providing any termination notice to Plaintiff as required under Section 3.1 of the Bond Contract. *Id.* ¶¶ 16–17. Defendant unilaterally assumed total control over the project and all subcontracts. *Id.* ¶¶ 25–26. Plaintiff has, through a series of letters, repeatedly told Defendant that it failed to satisfy the terms set forth in Section 3 of the Bond. *Id.* ¶ 29. Section 3 of the Bond Contract requires:

> If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after
>
> 1. the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice . . . .
> 2. the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

> 3. the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

Compl. Ex. A at 3 (hereinafter Bond Contract), ECF No. 1-1. Defendant continues to make demands of Plaintiff under the bond. Compl. ¶ 31. The Construction Contract[2] requires that prior to filing suit, the parties must attempt mediation:

> 16.3 Dispute Resolution.
>
> (a) Management Negotiations. The Parties shall use all reasonable efforts to settle disputes through negotiation between authorized members of each Party's senior management. Either Party may, by written notice to the other Party, request a meeting to initiate negotiations to be held within five (5) Business Days of the other Party's receipt of such request, at a mutually agreed time and place. If the dispute is not resolved within fifteen (15) Business Days of their first meeting, then the dispute shall be submitted to mediation in accordance with Section 16.3(b).
>
> (b) Mediation. If any dispute is not resolved by the procedures set forth in Section 16.3(a), then the Parties shall submit the dispute to mediation before a mutually acceptable mediator. The mediation shall take place [in] Washington, D.C. pursuant to the Construction Industry Rules of the American Arbitration Association. If the dispute is not resolved by the procedures set forth in this Section 16.3(b), then either Party may pursue any other remedies available to it at law or in equity.
>
> (c) Third Party Claims. Notwithstanding the Parties' agreement to mediate disputes arising pursuant to this Agreement, in the event a Party is sued by a third party or sues a third party on claims that concern the other Party's obligations under this Agreement and the allocation of liability and/or damages among all the Parties (including the Party sought to be joined pursuant to this Section 16.3(c) to the suit), then, the Party sued or the Party initiating suit may join the other Party. However, as a condition to such joinder, the Party sued or initiating suit must first request the third party to mediate the dispute pursuant to this Section 16.3. Each Party agrees not to object to such joinder or challenge such proceeding on the grounds that the Parties agreed to mediate disputes pursuant to this Section 16.3.

[2] Plaintiff does not attach the Construction Contract to the Complaint. Plaintiff does, however, attach the Performance Bond, which conditions the Surety's obligation on there being "no Owner Default under the Construction Contract." Bond Contract at 3. Defendant has attached relevant portions of the Construction Contract to its motion, *see* Mem. Supp. Ex. 1 at 12, ECF No. 20-1, and the parties do not dispute the authenticity of these attachments. On a motion to dismiss, the Court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 833 F.2d 159, 166 (4th Cir. 2016). The Construction Contract is integral to the Complaint. Plaintiff's claim arises under a bond that defines the Surety's obligation by reference to performance under the Construction Contract, so the claim turns on that contract's terms. The Court, therefore, considers the Construction Contract in resolving the Motion.

Mem. Supp. Ex. 1 at 12 (hereinafter Construction Contract), ECF No. 20-1.

Plaintiff commenced this action in this Court on December 19, 2025. Compl., ECF No. 1. On January 30, 2026, Defendant file its Motion to Dismiss, or In the Alternative, Stay ("Motion to Dismiss") and accompanying Memorandum in Support. ECF Nos. 19, 20. Plaintiff timely filed a Brief in Opposition to the Motion to Dismiss ("Resp. Opp'n") on February 13, 2026. ECF No. 21. Defendant filed its Reply on February 19, 2026. ECF No. 22. Accordingly, the Motion to Dismiss is ripe for review.

## III. ANALYSIS

Based on the aforementioned facts, Plaintiff asserts one claim against Defendant for a declaratory judgment regarding its obligations arising out of the underlying surety bond. Compl. ¶ 34. Defendant moves to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff's contractual obligation to engage in negotiation and mediation with Defendant renders this lawsuit premature. Mem.. Supp. 1. The Court will first discuss whether the Construction Contract and Bond Contract are interpreted together, ultimately finding that they are. Next, the Court will consider whether to dismiss or stay the proceedings while the parties participate in the required pre-litigation mediation, ultimately determining that a stay is more appropriate.

### A. The Parties Must Adhere to Mediation Provision of Construction Agreement Prior to Filing Suit

#### 1. The Construction Contract and the Bond Contract Are Construed Together

In Virginia,[3] when a contract expressly incorporates another contract by reference, both contracts "must be construed together to determine the character and extent of [the parties']

[3] When exercising diversity jurisdiction, as is the case here, the Court applies the substantive law of the state in which it sits. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)); *PSEG Renewable Transmission LLC v. Arentz Fam., LP*, 185 F.4th 497, 509 (4th Cir. 2026) (explaining that when a federal court's jurisdiction is pursuant to 28 U.S.C. § 1332, the court "look[s] to the decisions of the state's highest court" to resolve questions of state law"). The Construction Contract ("EPC Contract" as the parties refer to it) is governed under the laws of Virginia. *See* Reply Ex. 1 ¶ 16.6, ECF No. 22-1.

obligations." *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 709 n.6 (E.D. Va. 2006) (citing *Century Indem. Co. v. Esso Standard Oil Co.*, 79 S.E.2d 625, 627 (Va. 1954)); *see also New Amsterdam Cas. Co. v. Moretrench Corp.*, 35 S.E.2d 74, 77 (Va. 1945) ("[W]here a private contractor's bond for the faithful performance of a building contract refers to the contract and makes it a part of the bond and the contract in turn refers to the specifications and makes them a part of the contract, the bond, the contract, and the specifications are all to be construed together.").

Defendant argues that the Bond Contract expressly incorporates the Construction Contract, and therefore, Plaintiff was required to satisfy the mediation provisions set forth in the Construction Agreement prior to initiating this lawsuit. Mem. Supp. 10–11. Plaintiff argues that its claims arise out of the Bond Contract and do not implicate the mediation provisions of the Construction Contract. Resp. Opp'n 2, ECF No. 21.

The Court agrees with Defendant's argument that because the Bond Contract expressly incorporates the Construction Contract, the two must be construed together. *See* Bond Contract ("The Contractor and Surety, jointly and severally, bind themselves . . . to the Owner for the performance of the Construction Contract, which is incorporated herein by reference."). Furthermore, Plaintiff's arguments would necessarily involve analysis of the parties' performance under the Construction Contract, especially since Section 3 of the Bond Contract specifically requires a determination that there is no Owner default under the Construction Contract. *See Great Am. Ins. Co. v. Hinkle Contracting Corp.*, 497 F. App'x 348, 354 (4th Cir. 2012) (finding that the plaintiff's claims were subject to another contract's arbitration clause since there was a significant relationship between the claims asserted and the other contract) ("We conclude that the allegations contained in this claim bear a significant relationship to the subcontract, because they are premised on the differences between the terms of the subcontract and the terms of the change order.").

Additionally, Plaintiff's reliance on two Eighth Circuit cases to support its position is misplaced. Unlike in the Eighth Circuit cases, here, there was no provision in the Construction Contract limiting other parties from being bound by the Construction Contract. Additionally, courts in the Fourth Circuit recognize that these Eighth Circuit cases are outliers. *See Devs. Sur. & Indem. Co. v. Resurrection Baptist Church*, 759 F. Supp. 2d 665, 670 (D. Md. 2010) ("The Eighth Circuit is the only federal circuit to diverge from [the] view" that parties are bound by arbitration clauses when a bond contract specifically incorporates another contract containing an arbitration clause) (citing *Liberty Mut. Ins. Co. v. Mandaree Pub. Sch. Dist #36*, 503 F.3d 709 (8th Cir. 2007)).

For these reasons, the Court finds that the Bond Contract and Construction Contract must be construed together when considering the parties' obligations.

2. Plaintiff Is Bound by the Mediation Provisions of the Construction Contract

Having determined that the contracts must be construed together when considering the parties' obligations, the Court now considers whether Plaintiff is bound by the mediation provision in the Construction Contract. Plaintiff argues that it is not subject to the Construction Contract's mediation provision because it was not named in that contract as a "party." Resp. Opp'n 10. Defendant argues that Plaintiff's argument is unmoving because, as surety, Plaintiff "stands in the principal's shoes" and "may assert only those defenses available to the principal."[4] Reply 13.

[4] Defendant raises its surety and equitable arguments for the first time in its reply. *See* Reply 13, ECF No. 22. Although new arguments generally may not be raised in a reply brief, a district court may consider such an argument "under appropriate circumstances," including where the argument is "intimately related" to the original grounds for the motion. *De Simone v. VSL Pharms, Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) (quoting *Powell v. United States*, 2017 WL 3172831, at *3 (D. Md. July 26, 2017)). Defendant's surety argument is intimately related to the original ground for its motion: that Plaintiff is bound by the Construction Contract's mediation provision. *See* Mem. Supp. 8. It also response directly to Plaintiff's contention that it is not bound because it is not a "party" to the contract. *See* Resp. Opp'n 10. Moreover, Plaintiff did not seek leave to file a sur-reply addressing the argument. *See De Simone*, 36 F.4th at 531 ("[A] non-movant's opportunity to contest an untimely argument in a sur-reply supports a district court's decision to consider the untimely argument."); E.D. Va. Loc. Civ. R. 7(F)(1). The Court therefore considers it. Defendant alternatively argues that equitable estoppel may also serve to bind Plaintiff to the mediation agreement as a non-signatory. Reply 13 (citing, *inter alia*, *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006) ("[I]t is also important to note that just as estoppel can apply against a signatory to an arbitration clause

Defendant is correct. Plaintiff is bound by the mediation provision of the Construction Contract despite being a non-signatory and not a defined "party." *See Blumenthal-Kahn Elec. Ltd. v. Am. Home Assur. Co.*, 236 F. Supp. 2d 575, 583 (E.D. Va. 2002) (finding that the surety, even as a non-signatory, stood in the shoes of the principal and was obligated to an arbitration agreement); *see also Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 980 (4th Cir. 1985) (finding that an arbitration agreement in an underlying contract was enforceable to non-signatories, including the surety, through incorporation).

Because the Bond Contract and Construction Contract are construed together, and because Plaintiff stands in the shoes of the Blue Ridge, Plaintiff was required to fulfill the mediation provisions set forth in the Construction Contract prior to filing suit.

**B. The Court Will Stay the Proceedings While Mediation Occurs**

The Court now discusses whether to dismiss or stay this matter pending the parties' fulfilment of such provision. Defendant requests that the Court dismiss, or stay, this matter for ninety (90) days while the parties proceed with mediation. Mem. Supp. 14. The Defendant identifies cases supporting a decision to dismiss or stay pending mediation. *Id.* at 13 (citing *MBR Constr. Servs., Inc. v. Liberty Mut. Ins. Co.*, 2016 WL 727107, at *3 (D. Md. Feb. 22, 2016); *U.S. ex. rel. Harbor Const. Co. v. T.H.R. Enters., Inc.*, 2014 WL 4452755, at *2 (E.D. Va. Sept. 9, 2014); *Developers Sur. & Indem. Co.*, 759 F. Supp. 2d at 667–68). Plaintiff argues it would be prejudiced if a stay is entered because it would be "precluded . . . from exercising its bargained-for rights and completion options under the Bond [Contract]." Resp. Opp'n 13–14.

The Court finds that, while there is support for dismissing this matter, staying this matter is appropriate. *See, e.g., Devs. Sur. & Indem. Co.*, 759 F. Supp. 2d at 674 (staying the matter

---

who sues a nonsignatory thereto, it can also apply against a nonsignatory who sues a signatory."). The Court need not address this argument because Defendant's primary argument related to Plaintiff's obligation as surety is sufficient to find that Plaintiff is bound by the mediation provision of the Construction Contract.

because the plaintiff's claims were "subject to the mandatory mediation and arbitration provisions"); *U.S. ex rel. Harbor Const. Co.*, 2014 WL 4452755, at *3 (electing to stay the matter while the parties pursued arbitration or mediation); *Kane Builders S & D, Inc. v. Maryland CVS Pharmacy, LLC*, 2013 WL 2948381, at *3 (D. Md. June 13, 2013) ("[W]hen enforcing agreements to mediate, 'district courts have inherent, discretionary authority to issue stays in many circumstances, and granting a stay to permit mediation (or to require it) will often be appropriate.'" (quoting *Advanced Bodycare Sols., LLC v. Thione Intern., Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008))). While some delay may prejudice Plaintiff, enforcing the parties' obligations to mediate prior to initiating a lawsuit only delays the action by a short period of time since the parties could resume litigation if mediation were unsuccessful.

Additionally, the Court notes that there is dispute over whether a mediation clause carries the same effect as an arbitration clause, and whether this difference impacts a decision to stay or dismiss pending mediation. *See, e.g., U.S. ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, 2011 WL 475000, at *3 (E.D. Va. Feb. 4, 2011) (noting that some E.D. Va. courts have determined that, for purposes of the FAA, "mediation" is not "arbitration," while others have determined "mediation" is an alternative dispute resolution failing within the FAA). Ultimately, the Court finds that a stay is more appropriate, and the Court will order the parties to mediate, akin to staying the matter pending arbitration. *See id.* ("The Court is inclined to apply that same reasoning here, particularly given the Fourth Circuit's admonishment that '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.'" (quoting *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004))).

## IV. CONCLUSION

For the reasons detailed above, the Court denied Defendant's request to dismiss the action and granted Defendant's request to stay the matter while the parties pursue mediation. *See* Order, ECF No. 23.

/s/ RCY
Roderick C. Young
United States District Judge

Date: November 23, 2026
Richmond, Virginia